| | | |
|---|---|---|
| Charles Otis Herring, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-17-3474 |
| | § | |
| American Paper & Janitorial | § | |
| Products, Inc., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1.    *Introduction.*

Charles Otis Herring owned a janitorial business. American Paper & Janitorial Products, Inc., had a broad maintenance contract with NewFirst State Bank. Paper subcontracted the janitorial work to Herring.

Herring and two of his employees were seen stealing food from the Bank's refrigerator the night after the Bank's Christmas party. The Bank told Paper that it did not want Herring working in its building. Paper then canceled its contract with Herring.

Representing himself, and discounting any standing issues, Herring has sued for violations of employment discrimination, due process, conspiracy, breach of fiduciary duties, and tortuous interference. Herring will take nothing.

2.    *Background.*

In November 2015, Herring through his assumed name, Envirotech Solutions, contracted with Paper to supply janitors to Paper's customers. Paper offers a range of building maintenance some of which it supplied through subcontractors such as Herring. Paper has the contact to maintain the Bank. It allocated the janitorial work to Herring, just as it might have allocated electrical maintenance by a subcontract with an electrician.

After nine months, Paper expanded its contract with Envirotech to the cleaning of all of the Bank's branches. As volume increased, quality decreased. Bank employees began complaining that the cleaning crew's work was unsatisfactory. Herring insists that these complaints were fabricated to mask a tellers's jealousy over how much he was paid to clean. He says that these complaints did not start until the lower level employees learned how much the Bank was paying him.

In December 2016, Herring, who is black, along with two of his white employees, were filmed stealing food from the Bank's refrigerator. Herring met with Bank officials, watched the surveillance footage, and offered to pay for the missing food. Later that day, Paper ended the contract with Herring to clean the Bank.

Two weeks later, Herring learned that one of the employees in the theft was hired by another cleaning service. Paper hired that other company for the Bank job after Envirotech's was terminated. Herring sued, claiming that it is not fair that the Bank would permit that employee to be back yet Envirotech's contract was terminated.

3.    *Constitutional Claims.*
      Herring has sued:
      Paper, the Bank, Jimmie Salyer, Guy Stovall, III, Kimberly Krueger, Philip Leopold, Cheryl Roach, and Tina Frick.
      Paper and Salyer have already been dismissed. The defendants have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because Herring and the defendants have presented matters outside the pleadings, the motions to dismiss and the reply motions will be converted into motions for summary judgment.[1]

      A.    *Title VII.*
      To bring a discrimination claim under Title VII, the plaintiff must be an employee of the defendant. In determining whether employment exists, a hybrid economic realities and common-law control test is used.[2] The right to control an employee's conduct in the execution of his responsibilities is the most significant aspect. When examining control, what matters are whether the putative employer has the right

---

[1] *See* Fed. R. Civ. P 12(d).

[2] *Mares v. Marsh*, 777 F.2d 1066 (5th Cir.1985).

to (a) hire and fire the worker, (b) supervise him directly, (c) specify the employee's work, and (d) set the employee's schedule.[3] Economic realities include whether the putative employer disbursed the employee's salary, withheld taxes, covered him in benefit plans, and set the *terms and conditions* of employment.[4] No single factor is controlling.

Here, none of the remaining defendants employed Herring. Paper and Envirotech were the parties to one contract. Kimberly Krueger signed the contract for Paper – as its agent. She is not liable as an employer or a contracting party. Between Krueger and Herring, no relationship exists – none.

The Bank had a contract with Paper, which had one with Envirotech. The Bank paid Paper what it had agreed, and Paper paid Envirotech what it had agreed. Herring paid his employees and himself. They are his employees and he is self-employed, setting the jobs he accepts, the rates he sets, the staff he hires, and operating control of his people and equipment.

The Bank manifestly did not employ Herring. The law for equality of employment opportunity cover employees, not entrepreneur-contractors.

B.     Section 1981.

To support a claim under Section 1981 of the Civil Rights Act of 1866, Herring must have pleaded facts showing that the defendants (a) did not perform a contractual obligation to him (b) as a result of an intention to discriminate on the basis of Herring's race.[5] These claims must initially identify an impaired contractual relationship.[6] Further, to be successful, Herring must "identify injuries flowing from a racially motivated breach of his own contract with the person who breached their mutual contract, not of someone else's."[7]

---

[3] *Id.* at 1068.

[4] *Id.*

[5] *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391 (1982).

[6] *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 478 (2006).

[7] *Id.* at 480.

Herring says that Bank employees were trying to get Envirotech removed, but he cannot show a contractual obligation that the Bank owed him. His contract was with Paper, not the Bank or its employees.

Herring also says that the Bank employees were jealous that a black man could be making as much as he was. He insists that the complaints of poor performance did not start until after "the employees" learned how much he was making. This, to Herring, proves discrimination. Herring does not consider alternatives: the workers thought that his service was not worth the money he was being paid and their complaints were about their own wages with their ire directed at the Bank, their employer.

Herring identifies one Bank employee, the head teller. He has no facts to suggest that this woman or another teller procured the Bank's rejection of his service through Paper. For the institution itself, he ignores that this bank accepted him as a subcontractor and later agreed to expanding his scope of work. He ignores that the Bank had a video of him and his employees taking something that was not theirs.

The contract between Paper and Herring gave Paper sufficient grounds to cancel the contract. Paragraph three of the contract required Herring to abide by all of the Bank's "policies, practices, procedures, and expectations." Herring was required to read the Paper handbook and guidelines for sub-contractors, and he signed a statement acknowledging that "any infraction may result in termination." When Herring stole the pastries, he violated the contract. Paper did not violate the law by cancelling the contract.

Purloining pastries may seem frivolous, unless of course they belong to you. Banks are especially wary of dishonesty in their houses. The Bank is not required to prosecute Herring. It is not the government. Fairness, but not the law, suggests one should be careful in reacting to evidence of dishonesty. At law, the affected party need only have a reasonable basis for having lost confidence in the others' integrity, and that only applies when it is in connection with an employment of contract. Neither is here. Not only did Herring not have an employment contract with the Bank, but he did not have a contract with the Bank at all. Equally important is that the Bank was required to have plausible grounds to cancel the cleaning service – here they had better, they had a video.

4. *State Law Claims.*

Herring has sued the same people for conspiring to terminate Envirotech's contract and for the Bank breaching its fiduciary duty owed to Herring as a depositor. These claims are misguided.

Herring claims that, because multiple Bank employees were involved in terminating the contract with Paper, it was a conspiracy. This, however, is not a conspiracy.[8] No matter how much conversation and coordination may occur among people within one side of a deal or between several sides, it is not a basis for a legal claim. One cannot conspire about one's own business interests and relationships. Collusion is only illegal if its acknowledged purpose is itself illegal and two people agree. A company cannot conspire with itself. The Bank employees are all members of the Bank, so there could be no conspiracy even if supporting facts existed.

The Bank could not have breached a fiduciary duty to Herring because it owed him none. Herring claims that the Bank owed him a fiduciary duty because Envirotech had a company account at the Bank.

This argument too is misguided. In Texas, a depositor-bank relationship is a debtor-creditor relationship, not a fiduciary.[9] While Envirotech had a company account at the Bank, the Bank owed no fiduciary duties on the account. Further, the Bank did not act on the depository account; it took action on its contract with Paper, which happened to involve Envirotech.

5. *Conclusion.*

The facts of this case revolve around a series of interlocking business relationships. Relationships are maintained largely on trust. When that trust appears breached, it often is intolerable. Simply no facts support Herring's legal theories. No matter how much the Bank employees wanted Herring gone, no employee put Herring's hands on the refrigerator. This is not about diversity or cultural issues, it is

---

[8] The intra-corporate conspiracy rule construes employees of the same company to be the same person, and acts of the agent are acts of the company. *See Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).

[9] *See Texas Commerce Bank-Hurst, N.A. v. United States*, 703 F. Supp. 592, 594 (N.D. Tex. 1988); *see also In re Letterman Bros. Energy Sec. Litig.*, 799 F.2d 967, 975 (5th Cir. 1986).

about a contract between two private companies. Herring was never an employee, nor did he file a charge with the EEOC. As a result, Herring must lose.

Charles Otis Herring will take nothing from NewFirst State Bank, Guy Stovall, III, Kimberly Krueger, Philip Leopold, Cheryl Roach, and Tina Frick.

Signed on December 24, 2018, at Houston, Texas.

Lynn N. Hughes
United States District Judge